HARRIS, Judge.
Jacob Thornton, an employee who alleges that he had previously been injured on the job and that his impairment was being “reasonably accommodated” by his employer, appeals the determination that he is not entitled to unemployment benefits because he “voluntarily” left his employment without good cause attributable to his employer. We agree with Thornton and reverse the decision of the Unemployment Appeals Commission.
The facts as found by the referee and as approved by the Commission are as follows:
The claimant worked for the employer from December 12, 1994, to February 26, 1996. Known employer policy provides that employees are considered to have abandoned their job if they do not report to work or notify the employer of then-absence for two consecutive days. The claimant was scheduled to work from 7:00 a.m. to 3:00 p.m., Monday through Friday. On February 21, 1996, the claimant reported to the employer that a coworker had threatened him with a four-inch knife. The employer investigated the incident and suspended the eoworker for three days. The claimant met with his immediate supervisor and two other supervisory employees on February 21, 1996.... The claimant was angry because the coworker was not being discharged. The claimant’s supervisor told the claimant he was suspended. The claimant walked out of the meeting before the supervisor could tell him how long the suspension was for. The production manager and the claimant’s supervisor had discussed that the claimant would be suspended for the rest of the day if it was determined during the meeting that the claimant needed a cooling off period. The claimant did not report to work as scheduled on February 22, 23 or 26, 1996. The claimant saw his supervisor on February 22, 1996, when he and his wife went to pick up his paycheck. The claimant did not ask about his suspension and his supervisor told him the checks would be in later. On February 26, 1996, the claimant called his employer at approximately 7:30 a.m. The claimant was told by a secretary that the employer considered the claimant had voluntarily quit his employment when he did not report to work for two consecutive days. The claimant had no further contact with the employer.
*343 Based on the above finding of facts, the referee accepted the employer’s contention and concluded that Thornton had “voluntarily left work without good cause attributable to the employer.” The referee believed that since Thornton left the room before his supervisor could inform him that the suspension was only for the balance of the day, he should somehow be charged with notice that the suspension was not the three day suspension that the record indicates was standard for the company. The referee has not explained why the supervisor could not have said all in the same breath: “We’ve decided to suspend you for the rest of the day for a cooling off period.”
The referee refused to accept evidence, and erred thereby, tending to prove that the employer wanted to terminate Thornton because it was unhappy with having to accommodate his impairment caused by his earlier on-the-job injury. The employer’s witnesses’ credibility was subject to inquiry and the employer’s motivation might explain why an employee who attacks another with a weapon is suspended for only three days and yet the attacked employee is deemed to have “voluntarily” given up his employment because he failed to call in during what he mistakenly believed was a period of suspension.
If indeed the employer intended to suspend Thornton for only the remainder of the day (and we must accept this finding by the referee because there is support for it in the record), still it is undisputed in the record that the employer, by its actions or inactions, contributed to Thornton’s mistaken belief that the standard suspension was not being imposed and the employer should not be permitted to benefit thereby. Even if we ignore the molasses-like delivery of the supervisor (he was unable to say “for the rest of the day” as Thornton rose from his seat and crossed the room), the supervisor made no effort to call Thornton back or to slow his departure in order to explain that the standard suspension was not being imposed. Indeed, the very next day when Thornton came to pick up his paycheck and encountered his supervisor, the supervisor made no effort to clarify the period of suspension even though he knew that Thornton had not come to work that morning.
If the referee had permitted the testimony bearing on the employer’s unhappiness with having to accommodate Thornton’s impairment, we believe she might have reached a different result concerning whether a remainder of the day or a three-day suspension was actually imposed under the facts of this case.
We agree with the First District when it stated:
We are not unmindful of the fact that the Unemployment Compensation Law is remedial, humanitarian legislation and should be liberally and broadly construed.
Williams v. State Department of Commerce, 260 So.2d 233, 234 (Fla. 1st DCA 1972).
In our case, Thornton may have made a mistake (aided by the actions of the employer) by not calling in earlier, but nothing in this record justifies a finding that he voluntarily left his employment or that his termination was for cause.
REVERSED and REMANDED.
W. SHARP and ANTOON, JJ., concur.